*619 OPINION.
Kern :
As set forth above, there are three issues presented in this proceeding' for our determination. The first two issues pertain to the trust of 1930 described in the findings of fact; more specifically, as to whether (1) the income paid to petitioner’s wife in the years 1931, 1933, 1934, and 1935 from the trust should be included in petitioner’s taxable income, and (2) whether petitioner is taxable on a capital gain realized by the trust in 1935. The third issue, unrelated to these first two, demands our determination of whether petitioner received certain amounts as dividends from a personal holding company in the years 1933 and 1935, and is therefore taxable on those amounts. We shall consider the issues in the order presented.

Trust Issue.

Petitioner argues that he was never taxable on any income received by his wife from the 1923 trust and, inasmuch as the 1930 trust is no *620 more than, a continuation of the 1923 trust, the corpus from which the wife’s income is derived merely having been segregated from the remainder of the corpus, that therefore petitioner is not taxable on the income received by the wife under the 1930 trust agreement either.
We can not agree with the basic hypothesis of this argument; that the 1930 trust was merely a continuation of the 1923 trust and that petitioner’s wife merely continued to be the equitable owner of property which she already equitably owned.
In the first place, the wife’s rights unde?- the 1930 agreement were different from those enjoyed under the 1923 agreement. Whereas under the first trust she had been entitled to receive only 60 percent of the income for life from 100 percent of the trust corpus, in 1930 under the second trust she became entitled to receive 100 percent of the income from the trust corpus, the value of which was 68 percent of the corpus of the 1923 trust, and which had produced, when it was a part of the corpus of the 1923 trust, approximately 66 percent of the entire trust income.
In the second place, the wife secured an important right under the 1930 trust which she had not had under the 1923 trust, i. e., the obligation on the part of petitioner to pay to the trustee an amount sufficient to make up any difference between the annual trust income and the amount of $60,000, the petitioner thereby in effect guaranteeing an annual income to his wife of $60,000, less certain deductions. The wife in return surrendered certain rights which she had not surrendered under the 1923 trust, i. e., any and all rights in and to the estate or property of petitioner, including dower and maintenance or support.
In addition it is obvious that the occasion and purpose of the two trusts were different. The first was merely for the purpose of providing an independence and security to petitioner’s wife and two daughters and was occasioned, we may assume, by his tender solicitude for their happiness and welfare. The second, negotiated during the pendency of the Eeno divorce proceedings, had as its purpose the adjustment of rights and obligations of the two adverse parties in a divorce action who were bargaining with each other at arm’s length.
An insuperable objection to petitioner’s hypothesis is that it ignores the legal steps taken in connection with the creation of the 1930 trust. The second trust does not purport to be merely a modification of the first trust. In the agreement pursuant to which this trust was created it is recited that the 1923 trust had been effectually revoked and that petitioner’s wife acknowledges it to have been revoked and no longer of any force or effect, and further that she disclaims any right or interest held thereunder. In the release signed by Rufus T. Bush, one of the beneficiaries under the 1923 trust, *621 whereby he relinquished all rights thereunder, it was recited that the 1928 trust had been revoked. Petitioner believed at the time the 1930 trust was established that his two daughters had likewise consented to the termination of the 1923 trust. A question later arising as to whether they had in reality given their consent, proper ratifications of his actions in revoking the 1923 trust were obtained from them. We must consider, therefore, that the 1923 trust was terminated by consent of all the interested parties and the property of the trust in legal effect was restored to petitioner free from the burdens of the trust. For immediately thereafter the petitioner, according to the recitations of the trust agreement of 1930, assigned, transferred, set over, and delivered unto the trustee named therein the securities which were to be the corpus of the new trust and had been part of the corpus of the terminated trust of 1923. The fact that his friend and business associate, Simonds, who had been trustee under the 1923 trust and retained physical possession of the securities, was the one who actually handed them over to the corporate trustee under the 1930 trust, does not affect our conclusion that in contemplation of law the petitioner was at the time again the owner of these securities, free from the trust created in 1923, and as such owner granted them to another trust, of which he was the settlor and which had purposes and terms far different from those of the first trust.
The mere fact that the wife would not have consented to the termination of the first trust if the second trust had not been established does not make the second trust as a matter of law only a modification or continuation of the first trust.
Petitioner also contends that after the execution of the trust agreement of 1930 there was no obligation on his part which was or would be satisfied by the trust income, pointing out that the law of Nevada, as construed by the Supreme Court in Helvering v. Fuller, 310 U. S. 69, is to the effect that “the wife’s allowance once made is final” unless the court granting the divorce expressly reserves the power to modify it or approves a settlement which provides for its modification. In the instant proceeding the Nevada court granting the divorce approved the trust agreement as fair and reasonable and in lieu of support and maintenance, and reserved no power to modify it. It therefore appears that under the local law of Nevada there remained no obligation on petitioner which was discharged by the trust income.
But this is not enough. The petitioner must show not only that he had no obligation under local law which was satisfied by the trust income, but also that he had no obligation, even contingent, arising by reason of contract. This the petitioner has not done and can not do. The trust agreement itself imposes on him a contingent obligation in lieu of the preexisting obligation of supporting his wife. The *622 obligation is to pay annually to the trustee of the trust under which his wife is beneficiary an amount sufficient to make up any difference between the annual trust income and $60,000, contingent upon such income not amounting to $60,000. Thus in effect petitioner guaranteed that the income from the trust available for distribution to his wife would be the sum of $60,000. The record shows that in one year at least the petitioner recognized this obligation by paying to the trustee an amount necessary to bring the income of the trust to $60,000. Because of this obligation, petitioner retained broad powers over the corpus of the trust and insisted on investments paying large returns, even though the trustee protested that they were not investments proper for a trust to make. In our opinion the situation here present falls squarely within the rule laid down by the Supreme Court in Helvering v. Leonard, 310 U. S. 80, and the income of the trust is taxable to petitioner under Douglas v. Willcuts, 296 U. S. 1. See also E. T. Weir, 39 B. T. A. 400; affirmed on this issue, 109 Fed. (2d) 996.
Petitioner has made some argument to the effect that such a decision would result in the short-sighted neglect of the public aspects of taxation. This is obviously an argument to be properly presented to the legislative branch of the Government. See Report of Senate Finance Committee on the Revenue Bill of 1941.
In view of our conclusion that the income of the 1930 trust was taxable to petitioner under the rule of Helvering v. Leonard, supra, we deem unnecessary an extended consideration of respondent’s argument that it is taxable under the rule of Helvering v. Clifford, 309 U. S. 331. In this proceeding the trust was irrevocable and petitioner retained not even the possibility of reversion either to himself or his estate. Under these circumstances we can not feel that the facts disclosed by the record bring this proceeding under the rule of the Clifford case. See Estate of William, Childs, 44 B. T. A. 1191; Frederick Ayer, 45 B. T. A. 146.
The second issue before us in connection with this 1930 trust is whether certain capital gains realized by the trust in 1935 should be taxable to petitioner. A determination of this point requires few words. The capital gains are not taxable to petitioner. Inasmuch as there was no reserved power of revocation, no reversion, and the re-maindermen are named in the agreement, we fail to see any theory under which respondent can earnestly urge his contention. Capital gains in New York State are added to corpus unless the trust instrument directs otherwise. Matter of Hagen’s Will, 262 N. Y. 301; 186 N. E. 792; Matter of Gerry, 103 N. Y. 445; 9 N. E. 235. In the instant case the trust instrument did not direct otherwise.
In the case of Reginald B. Parsons, 44 B. T. A. 1142, we held capital gains of a trust taxable to the settlor under section 22 (a) of the Revenue Acts of 1934 and 193,6, but there the settlor had the power to dispose ,o¡f the corpus by will. yVe s,a,id there .that the taxpayer jqusf he r,e- *623 garded as in substance the owner of the trust corpus. In the instant case, where the petitioner retained no reversionary interest whatsoever, we can arrive at no such conclusion. We, therefore, resolve this issue in favor of the petitioner.

Holding Company Issue.

The final issue for our determination herein is whether certain amounts allegedly borrowed by petitioner in 1933 and 1935 from Shore Bungalows, Inc., all of whose stock was then held by petitioner, should be treated as dividends instead of loans and therefore be added to petitioner’s taxable income for those years. This is a question of fact and, as we have indicated in our findings of fact, we believe that these amounts were actually considered by both the petitioner and the corporation as loans, to be repaid in the future. The books of the corporation so treat these amounts. Respondent points out that bookkeeping entries, though in some circumstances of evidential value, are not determinative of tax liability, citing Helvering v. Midland Mutual Life Insurance Co., 300 U. S. 216, 223; and also that lack of formal declaration of dividends is not controlling, citing Waggaman v. Helvering, 78 Fed. (2d) 721, 723; certiorari denied, 296 U. S. 618. While we agree with respondent on these points, we must point out that complementary evidence, whether oral or documentary, may serve to bolster the weight to be given bookkeeping entries and the lack of dividend declarations.
In the instant case we are convinced by the oral testimony and documentary evidence in the record that the sums charged to petitioner by the corporation in the taxable years were truly considered by him and all other parties concerned as loans, to be repaid. The fact that no interest was ever charged by the corporation on these loans is understandable, inasmuch as the stock of the corporation was wholly owned by petitioner. Cf. Moses W. Faitoute, 38 B. T. A. 32. That there were no formal authorizations of loans is evidence, at most, here of loose corporate procedure. But the evidence shows that the loans were not made without the knowledge and consent of the corporate officers. Respondent points out that repayment was made only after petitioner had become apprised of the Government’s position in this matter. That is a fact which is of weight only circumstantially. We have found that the weight of the evidence favors petitioner’s contention.
Petitioner claims that the pro forma balance sheets show a deficit in each of the years 1933 and 1935, and that under New York law no dividends could be paid while a deficit existed. Because of our disposal of this issue on the facts set forth above, we need not go into this contention. Petitioner is not taxable, as determined by respondent, on those amounts claimed to have been received as dividends in 1933 and 1935.

Decision toill be entered wnder Bule 50,